UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

A.F.N. *by her Parent and Natural Guardian* *Dinorah Nouel-Peguero*,

                       Plaintiff,

-v-

UNITED STATES OF AMERICA,

                       Defendant.

22 Civ. 8075 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

    Plaintiff Dinorah Nouel-Peguero, acting as legal guardian of infant plaintiff A.F.N., filed this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, against the United States of America for the alleged negligence and/or medical malpractice of Dr. Eva Rynjah, an employee of the United States Department of Health and Human Services. Dkt. 1 ("Compl.") at 1. After negotiations, the parties have reached an agreement to settle this matter for, *inter alia*, $50,000, inclusive of costs and attorneys' fees. Under the settlement, 25% of the settlement award, less costs, will be paid to plaintiff's counsel as his legal fee. The balance of $34,334.63 will be held in escrow by plaintiff's counsel's firm until satisfaction of a medical lien, the exact amount of which remains unknown pending notification by the New York City Department of Social Services. Once that lien is paid, the firm will issue a check to Nouel-Peguero, as A.F.N.'s parent and natural guardian, for the remaining settlement amount. *See* Dkt. 32 ("Ashman Decl.") ¶ 18.

    After reviewing the proposed settlement, as well as the submissions by Nouel-Peguero and plaintiff's counsel in support of the settlement, the Court concludes that the settlement is

fair, reasonable, and in the best interests of the infant. Accordingly, the Court grants Nouel-Peguero's motion to approve the proposed infant compromise stipulation.

## I. Background

On September 21, 2022, Nouel-Peguero filed this FTCA action on behalf of her daughter, A.F.N., against the United States as defendant. Dkt. 1. In August 2018, when A.F.N., then age 11, sustained a laceration to her left fifth finger from opening a metal can, Nouel-Peguero brought A.F.N. to the emergency department of Montefiore Medical Center. *Id.* ¶ 13; Ashman Decl. ¶ 4. The emergency room doctor applied stitches to the wound but did not conduct further tests. Ashman Decl. ¶ 4. Ten days after the emergency room visit, Nouel-Peguero took A.F.N. to a Montefiore pediatric facility, where A.F.N. was seen by Dr. Rynjah, an employee of the United States Department of Health and Human Services. *Id.* ¶ 5. Dr. Rynjah removed A.F.N.'s stitches but did not conduct any additional examination. *Id.* Months later, in October 2018, Rynjah saw A.F.N. again and, after A.F.N. complained of continued problems with movement in her affected finger, scheduled A.F.N. for an orthopedist appointment. *Id.* It was then, approximately two-and-a-half months after the initial injury, discovered that A.F.N. had torn tendons in her finger. This required two surgeries, one in November 2018 and one in June 2019. *Id.* ¶ 6. The near-three-month delay in treatment, exacerbated by Dr. Rynjah's supposed failure to ascertain the extent of A.F.N.'s injuries, is alleged to have contributed to A.F.N.'s continued pain and trouble moving her injured finger. *Id.*

On April 24, 2019, Nouel-Peguero retained the firm of Michelstein & Ashman, PLLC, to represent A.F.N. in bringing claims for medical malpractice. At that time, plaintiff's counsel did not know that a potential defendant in this case—now, Dr. Rynjah—was a federal employee. As such, the retainer agreement between Nouel-Peguero and Michelstein & Ashman, PLLC, did not

address the FTCA's limitations on legal fees, but incorporated New York Judiciary Law § 474-a's provision for attorney's fees at a rate of 30% of the first $250,000 recovered. *Id.* ¶ 10.

Once it became clear that Dr. Rynjah was employed by a federal agency, Ashman prepared and filed a claim with the United States Department of Health & Human Services pursuant to the FTCA, and, on September 21, 2022, filed the complaint in this action. Dkt. 1. On November 22, 2022, the United States answered. Dkt. 7. After an initial pretrial conference and setting a discovery schedule, the Court referred this case to Magistrate Judge Sarah Netburn for the purpose of facilitating settlement discussions. Dkts. 11–12. After expert discovery, the parties undertook settlement negotiations and eventually negotiated the proposed settlement, under which defendant agreed to pay a total of $50,000 to settle all of A.F.N.'s claims. Ashman Decl., Ex. 1 ("Proposed Stipulation"). The proposed settlement provides for the $50,000 to be distributed as follows: (1) $4,220.50 in costs, $3,250 of which are attributable to fees for expert review of the case and an expert report; (2) $11,444.87 in attorney's fees, amounting to 25% of the settlement amount, less costs; and (3) a balance of $34,334.63 to be held in escrow by Michelstein and Ashman, PLLC, pending satisfaction of an outstanding medical lien—final information in connection with which has not yet been made available by the New York City Department of Social Services—and immediately thereafter disbursed by check to Nouel-Peguero as A.F.N.'s parent and guardian. Ashman Decl. ¶¶ 16,18.

On April 30, 2024, plaintiff filed a motion to approve the proposed infant's compromise. Dkt. 31. As required by New York C.P.L.R., Nouel-Peguero submitted an affidavit in support of the motion. Dkt. 33 ("Nouel-Peguero Decl."). Ashman also submitted a declaration explaining the terms of the infant's compromise, stating why the proposed settlement is fair and reasonable, and outlining his firm's efforts to obtain final information concerning A.F.N.'s outstanding

medical lien. Dkt. 32. Ashman also submitted a memorandum of law in support of the instant motion. Dkt. 34.

## II.     Discussion

Local Civil Rule 83.2(a)(1) requires parties to obtain court approval before settling an action by or on behalf of a minor. In determining whether an infant compromise should be approved, the reviewing court "shall conform, as nearly as may be, to the New York State statutes and rules." Local Civil R. 83(2)(a)(1). In accord with the applicable New York statutes and rules, courts inquire "whether (1) the proposed settlement is in the infant's best interests; and (2) the proposed attorney's fees and costs are reasonable." *D.J. ex rel. Roberts v. City of New York*, No. 11 Civ. 5458 (JGK) (DF), 2012 WL 5431034, at *2 (S.D.N.Y. Oct. 16, 2012), *report and recommendation adopted sub nom.*, *Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012) (citing Local Civil R. 83.2(a); N.Y. Jud. Law § 474; N.Y. C.P.L.R. §§ 1205–1208).

### A.     Fairness of the Total Settlement Award

#### 1.     Applicable Legal Standards

There is no "bright-line test" for determining whether a proposed settlement is in the infant's best interest. *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972) (noting "delica[cy]" of multifactorial analysis as to whether settlement is appropriate)). Rather, the Court must assess whether the proposed settlement is "fair, reasonable, and adequate by comparing the terms of the compromise with the likely rewards of litigation." *Everett v. Bazilme*, No. 06 Civ. 0369 (SJ) (JO), 2007 WL 1876591, at *2 (E.D.N.Y. June 28, 2007) (quoting *Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 654 (2d Cir. 1999)) (internal quotation marks omitted). There is a strong presumption that a settlement is fair and reasonable where "(i) the settlement is not collusive but was reached after arm's length

4

negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *Orlandi ex rel. Colon v. Navistar Leasing Co.*, No. 09 Civ. 4855 (THK), 2011 WL 3874870, at *2 (S.D.N.Y. Sept. 2, 2011) (quoting *Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988)). Other factors to consider include "the complexity, expense, and likely duration of litigation . . . [and] the risks of establishing both liability and damages." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing *City of Detroit v. Grinned Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (internal citations omitted). Finally, courts afford "significant deference" to a guardian's view that the settlement reached is fair and reasonable to the infant plaintiff. *Orlandi*, 2011 WL 3874870, at *2; *see also Stephen v. Target Corp.*, No. 08 Civ. 338 (CPS) (JG), 2009 WL 367623, at *3 (E.D.N.Y. Feb. 12, 2009) (adopting report and recommendation); *Stahl v. Rhee*, 643 N.Y.S.2d 148, 153 (2d Dep't 1996) (noting that "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

### 2. Analysis

Viewing the proposed infant compromise in light of these familiar standards, the Court finds it fair, reasonable, and in A.F.N.'s best interests. First, there is no evidence of collusion. Ashman represents that the settlement was reached only after arm's-length negotiations with the defendant. And, as the sole defendant in this case is the United States government, Ashman does not work for the defendant and has not received funds therefrom. Ashman Decl. ¶ 7; *see* N.Y. C.P.L.R. § 1208(b) (requiring that such an affirmation be included in submission in support of a proposed infant compromise order).

Second, plaintiff's counsel has significant experience with personal injury and/or medical malpractice matters. Ashman was admitted to the bars of New York and this District in 1990. Ashman Decl. ¶ 13. Ashman has been practicing personal injury law for 35 years, and has

litigated more than 500 medical malpractice matters. *Id.* He is the managing partner of his firm, Michelstein & Ashman, PLLC. *Id.* ¶ 1.

Third, the Court is satisfied that sufficient discovery was conducted to enable an informed analysis of the issues and proposed settlement. Ashman's declaration, including an accounting of disbursements by plaintiff's counsel over the course of the litigation, make clear that, before the settlement negotiations, counsel investigated A.F.N.'s allegations, conducted some document discovery, received and reviewed A.F.N.'s medical records, solicited expert review from two doctors, at least one of whom was retained to issue a report, and deposed Dr. Rynjah. *Id.* ¶¶ 7, 11–12; *see also Jurdine ex rel. Jurdine v. City of New York*, No. 07 Civ. 2915 (CBA) (JO), 2008 WL 974650, at *3 (E.D.N.Y. Apr. 8, 2008) (holding that an "exchange of written discovery and counsel's investigation into the circumstances surrounding the alleged" conduct by defendant "were sufficient to enable an intelligent analysis of the issues and the proposed settlement") (adopting report and recommendation).

Fourth, the Court finds that the terms of the compromise are adequate in light of the risks, expenses, and likely rewards of litigation. The parties propose to settle the matter for $50,000, with a net total of $34,334.63 first to be held in escrow by Michelstein & Ashman, PLLC, pending satisfaction of the medical lien, and then to be issued via check to Nouel-Peguero, as A.F.N.'s parent and natural guardian, together with an officer of an as-of-yet undesignated bank. Ashman Decl. ¶ 18. Ashman reasonably opines that, based on A.F.N.'s finger injuries—from which A.F.N. continues to suffer pain and experience a limitation of movement—as well as the "respective responsibilities of Dr. Rynjah and the doctors who initially treated A.F.N. at Montefiore Medical Center," he believes that "a settlement of the claims of A.F.N. against this defendant for the sum of $50,000 is fair and reasonable." *Id.* ¶ 8.

Given the potential difficulty in establishing Dr. Rynjah's responsibility and the extent to which Dr. Rynjah's conduct caused A.F.N.'s damages, and given the scale of A.F.N.'s injuries, the Court agrees that settlement of this claim against this defendant for $50,000 is reasonable. *See, e.g.*, *D.L.G. ex rel. Gomez v. United States*, No. 12 Civ. 7526 (RA), 2015 WL 6736163, at *8 (S.D.N.Y. 2015) (settlement award of $100,000 in medical malpractice action was fair and reasonable, because, despite relatively severe and lasting injury in the form of cognitive and behavioral deficits, there were alternative plausible causes of injury, and infant had not received continued medical care for injuries). This conclusion is buttressed by the endorsement from Nouel-Peguero, as A.F.N.'s legal guardian, whose view that the proposed settlement is fair for her child merits a degree of deference. *See* Nouel-Peguero Decl. ¶¶ 13–14; *Stahl*, 643 N.Y.S.2d at 153.

### B.     Attorneys' Fees

#### 1.     Legal Standard for Assessing the Reasonableness of the Fee Award

Under New York Judiciary Law § 474, whether the amount of attorneys' fees requested as part of an infant's compromise proceeding is appropriate turns on whether it is "suitable compensation for the attorney for his service . . . [on] behalf of the . . . infant." *Allstate Ins. Co. v. Williams*, No. 04 Civ. 4575 (CLP), 2006 WL 2711538, at *4 (E.D.N.Y. Sept. 21, 2006) (quoting *Werner v. Levine*, 276 N.Y.S.2d 269, 271 (Sup. Ct. Nassau Co. 1967)) (internal quotation marks omitted). "[T]he Court has an independent obligation to scrutinize the appropriateness of counsel's requested compensation, so as to protect the interests of the infant client." *D.J. ex rel. Roberts*, 2012 WL 5431034, at *3 (citing Local Civil R. 83.2(a)(2)). Accordingly, contingency-fee agreements are to be treated by the Court as "advisory only," *id.*, and the contract between an infant's attorney and legal guardian is only "one of the elements

7

which the judge may take into consideration in fixing reasonable compensation." *White v. DaimlerChrysler Corp.*, 871 N.Y.S.2d 170, 173 (2d Dep't 2008).

The FTCA caps attorneys' fees for claims of the nature here at 25% of the settlement amount. 28 U.S.C. § 2678 ("No attorney shall charge, demand, receive, or collect for services rendered, fees in excess of 25 per centum of any . . . settlement made pursuant to section 2677 of this title[.]").

### 2. Analysis

Plaintiff asks this Court to approve the settlement of this action with an attorneys' fee award of 25% of the settlement amount net costs, or $11,444.87 (or [$50,000 - $4,220.50 (in costs)] * 0.25). Dkt. 34 at 5. The Court finds this award reasonable and appropriate.

Although the fee arrangement between Nouel-Peguero and Ashman is "advisory only," the Court recognizes that, absent the FTCA cap, the fee arrangement would have called for fees exceeding the 25% maximum allowed under the FTCA. Ashman Decl. ¶ 14. Similar awards have typically been approved in FTCA cases in this Circuit. *See, e.g., D.L.G. ex rel. Gomez*, 2015 WL 6736163, at *2 ("Because the proposed attorney's fees do not exceed twenty-five percent of the total settlement, the requested fee falls within the range of acceptable compensation."); *Z.H.W. by Williams v. United States*, No. 12 Civ. 3912 (RJD) (ST), 2020 WL 813637, at *3 (E.D.N.Y. Feb. 19, 2020) (adopting attorney's fee within 25% cap); *Fair v. United States*, No. 12 Civ. 6062 (MKB), 2014 WL 2862658, at *1–2 (E.D.N.Y. June 23, 2014) (approving fee award of 25% of settlement net costs in FTCA case where retainer agreement would otherwise have provided for more).

It is, further, apparent that Ashman devoted significant time to representing A.F.N, and successfully obtaining a favorable settlement agreement for her. *See* Ashman Decl. ¶¶ 11–12 (describing efforts such as determining that Dr. Rynjah was an employee of a federal agency;

8

preparing and filing a claim with the Department of Health & Human Services under the FTCA; preparing and filing the complaint in this action; soliciting, reviewing, and responding to requests for documentary discovery; defending the plaintiff at her deposition and conducting the deposition of Dr. Rynjah; plus negotiating the instant settlement). The Court therefore holds that the $11,444.87 fee award is "suitable compensation" for Ashman's work on behalf of A.F.N. *Allstate*, 2006 WL 2711538, at *4.

## CONCLUSION

Based on its review of the submissions by counsel for the infant and the infant's mother and guardian, the Court finds the proposed settlement of the claims by Nouel-Peguero on behalf of her infant daughter, A.F.N., in the amount of $50,000, fair, reasonable, and proper. In addition, the Court grants Ashman's request for $11,44.87 in attorney's fees and $4,220.50 in costs. The Court orders that the remaining $34,334.63 be paid to Michelstein & Ashman, PLLC, to be held in escrow pending satisfaction of A.F.N.'s medical lien, which the firm should pay from this amount. Once the medical lien is paid, the firm is directed to issue a check to Nouel-Peguero for the remaining funds held in escrow.

The Court will retain jurisdiction over this matter for the purposes of enforcing the infant compromise order and the terms of the underlying settlement, and hearing and determining applications for the release of funds under the infant compromise order.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 2, 2024
      New York, New York